## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **Philip Charbonneau** | : | |
| **7592 Chancery Drive** | : | |
| **Dublin, Ohio  43016** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No. 2:14-cv-910** |
| **v.** | : | |
| | : | **Judge** |
| **Synthomer, Ltd. a/k/a Synthomer Plc** | : | |
| **Central Road, Templefields** | : | |
| **Harlow, Essex CM20 2BH** | : | |
| **United Kingdom** | : | **JURY DEMAND** |
| | : | **ENDORSED HEREON** |
| **and** | : | |
| | : | |
| **Synthomer, LLC** | : | |
| **3379 Peachtree Road NE, Suite 750** | : | |
| **Atlanta, Georgia  30326** | : | |
| | : | |
| **Defendants.** | : | |

## COMPLAINT

Plaintiff, Philip Charbonneau, brings this action against Defendants – Synthomer, Ltd. a/k/a Synthomer Plc and Synthomer, LLC – for age discrimination and retaliation, and national origin discrimination and retaliation, in violation of both federal law (Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*) and Ohio law (Revised Code Chapter 4112).

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff, Philip Charbonneau, is a citizen of Ohio who resides in Franklin County, Ohio.  Mr. Charbonneau was employed by Defendants.  At the time of Plaintiff's discharge, he held the title of "Director – America" and was in charge of Synthomer's sales and operations in the United States.

2.      Defendant Synthomer, LLC, ("Synthomer America") was at all relevant times an Ohio limited liability company that was transacting business in Ohio.  Synthomer America is a wholly owned subsidiary of Synthomer Ltd.

3.      Defendant Synthomer, Ltd. a/k/a Synthomer Plc ("Synthomer Europe") is a European company that transacts business in Ohio.

4.      Synthomer Europe and Synthomer America (together, "Synthomer") are an integrated enterprise and constitute a single employer.  The entities have interrelated operations, common management and ownership, and centralized control over employment and labor relations.  Plaintiff reported directly to David Ian Anderson, Chief Operating Officer of Synthomer Europe.  Synthomer Europe employees make employment decisions for Synthomer America, and all human resources functions for Synthomer America are handled by Synthomer Europe.

5.      This Court has jurisdiction over the claims herein pursuant to 28 U.S.C. §1331.  This action arises under the laws of the United States.

6.      Venue herein is proper pursuant to 28 U.S.C. §1391(b) because Plaintiff is a resident of Franklin County, Ohio, and the actions complained of herein happened to Plaintiff in Franklin County, Ohio.

7.      Plaintiff filed a first charge of discrimination with the Equal Employment Opportunity Commission, alleging age discrimination, national origin discrimination, and retaliation, on or about April 6, 2012.  Plaintiff filed a second charge with the Equal Employment Opportunity Commission, alleging further retaliation, on or about November 7, 2012.  On or about April 25, 2014, fewer than 90 days prior to the filing of this complaint, Plaintiff received from the Equal Employment Opportunity Commission a notice of Right to Sue on both of the foregoing charges.

8.      The incidents described below were part of a continuing series of incidents of discrimination that occurred at Synthomer, and which constitute a continuing violation of Plaintiff's rights.

## BACKGROUND FACTS

9.      Plaintiff's employment was terminated by Synthomer on or about January 16, 2012.  He was fifty-two years old at the time.

10.      Prior to his termination, Plaintiff had been an exemplary employee.  He never received a negative performance evaluation.  He was never placed on any type of performance counseling.  Indeed, Plaintiff made countless positive contributions to Synthomer's success.

11.      In April, 2011, Synthomer hired Alexandra Diehl.  Ms. Diehl was approximately thirty-seven years old at the time.  She is a German National.  Ms. Diehl was not required to relocate to Synthomer America's Ohio headquarters.  Rather, she was permitted to work from her home in Atlanta, Georgia.

12.      Plaintiff is an American and a U.S. citizen.

13.      After hiring Ms. Diehl, Synthomer indicated that she would report to Plaintiff.

14.      Ms. Diehl, however, refused to properly report to Plaintiff.  Plaintiff's requests to Ms. Diehl for items such as travel plans, sales call reports, and expense reports were ignored.

15.      Ms. Diehl even went so far as to refuse to come to Ohio when Plaintiff directed her to do so.

16.      Plaintiff communicated with his supervisor, Ian Anderson, about Ms. Diehl's insubordination and sought disciplinary action against Ms. Diehl.  Plaintiff indicated that Synthomer was giving Ms. Diehl favorable treatment.

17.      Synthomer regularly treated Ms. Diehl, a European employee, better than American employees, in a variety of ways.  For instance, Ms. Diehl was provided with a much

more lucrative incentive compensation plan than American employees. As another example, Ms. Diehl was provided a company car and compensated for maintenance, insurance, and expenses related to the car.

18.     In the summer of 2011, Synthomer decided to relocate its Ohio office from Powell, Ohio to Dublin, Ohio. Plaintiff was tasked with finding an appropriate location and overseeing the move. In September, 2011, Synthomer executed a two-year lease for office space in Dublin, and transferred its operations and equipment to the Dublin location.

19.     Ms. Diehl's conduct and insubordination worsened over time. Plaintiff ultimately requested an in-person meeting with Ian Anderson and a Synthomer human resources representative.

20.     In September, 2011, Plaintiff flew to Germany to meet with Anderson and a human resources representative. In that meeting, Plaintiff expressed concern that Ms. Diehl was being treated more favorably than Plaintiff due to Plaintiff's age and/or national origin. Plaintiff also expressed his concern that Synthomer's European employees were being treated more favorably than American employees.

21.     Synthomer refused to take any action against Ms. Diehl.

22.     Following that meeting, Synthomer began a continuing pattern of discriminatory and retaliatory conduct toward Plaintiff. That conduct was designed to punish Plaintiff for his complaints, and to force Plaintiff's resignation so that he could be replaced by Ms. Diehl, because Synthomer wanted a younger employee and a European employee in Plaintiff's position.

23.     Synthomer began systematically reducing Plaintiff's duties and responsibilities. Synthomer removed certain accounts from Plaintiff and transferred them to Ms. Diehl, which, among other things, had the effect of increasing Ms. Diehl's compensation and decreasing Plaintiff's compensation.

24.     Synthomer also stripped Plaintiff of his hiring authority and removed his expense approval and management authority.

25.     Plaintiff nevertheless refused to resign, and the discrimination and retaliation by Synthomer then escalated.

26.     Less than one month after Plaintiff complained in the Germany meeting about age and national origin discrimination, and less than two months after signing a two-year lease in Dublin, Ohio, Synthomer announced that it was transferring its North American operation headquarters to Atlanta, Georgia – not coincidentally, the home of Ms. Diehl.

27.     Synthomer was aware that Plaintiff and his family lived in Ohio and that Plaintiff would not be inclined to move to Atlanta.  The decision to transfer operations to Atlanta was made in an attempt to force Plaintiff's resignation and replace him with a younger, European employee.

28.     After Synthomer's sudden announcement of the closure of the Ohio office, Plaintiff inquired with Mr. Anderson about his future with the company.  Mr. Anderson indicated that Plaintiff would be offered a position in Atlanta, but provided no details and did not put anything in writing.  Notably, while Ms. Diehl was permitted to work in Atlanta when operations were headquartered in Ohio, Plaintiff was not permitted to work in Ohio once operations were moved to Atlanta.

29.     Plaintiff expressed to Mr. Anderson that he was concerned that, if he moved to Atlanta, it would all be for naught because he thought the company may be intending to soon replace him with Ms. Diehl.  Anderson responded by saying, "Not to worry, at your age, you will receive a good severance."  Plaintiff asked what his age had to do with this decision, and Anderson repeated the same comment.

30.     On December 15, 2011, a Synthomer human resources representative presented Plaintiff with a notice of termination, a small offer of severance, and a release and waiver of claims.

31.     Shortly thereafter, Mr. Anderson contacted Plaintiff to revoke the severance offer, stating that by not pursuing a position in Atlanta, Plaintiff had resigned, and was therefore not entitled to any severance.

32.     Confused about his employment status, Plaintiff sought clarification from Mr. Anderson, and again voiced his opposition to the discriminatory and retaliatory treatment.

33.     Receiving no substantive response from Mr. Anderson, Plaintiff reached out to human resources, but still received no substantive response.  At this time, Plaintiff understood that his employment with Synthomer was to continue for at least a few more months.

34.     Plaintiff then retained legal counsel.  On January 12, 2012, Plaintiff notified Synthomer that he had retained legal counsel.  Less than 24 hours later, Synthomer terminated him and told him not to report to work as of January 16, 2012.

35.     Synthomer actually and constructively discharged Plaintiff.  Synthomer replaced Plaintiff with Ms. Diehl.

36.     On or about April 6, 2012, Plaintiff filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission.

37.     Synthomer responded by retaliating against Plaintiff due to the filing of his first EEOC charge.

38.     Prior to the initiation of the first EEOC charge, Synthomer had agreed to pay Plaintiff through April 30, 2012.  As soon as Synthomer received notice of Plaintiff's EEOC charge, however, Synthomer ceased paying Plaintiff the wages to which he was entitled.

- 6 -

39.     Plaintiff's first EEOC charge was filed on April 6, 2012.  Synthomer ceased payroll payments to Plaintiff for the period of April 7, 2012 through April 30, 2012.

40.     Synthomer provided Plaintiff with no explanation for ceasing his payroll payments.

41.     Synthomer further retaliated against Plaintiff by failing to provide him with timely notification of his rights to continued health insurance under COBRA.

42.     On or about November 7, 2012, Plaintiff filed a second EEOC charge regarding these instances of retaliation in response to his first EEOC charge.

43.     The above actions taken against Plaintiff were motivated by his national origin, his age, and his protected complaints about unlawful discrimination.

## COUNT ONE – NATIONAL ORIGIN DISCRIMINATION
### (FEDERAL LAW AND OHIO LAW)

44.     The allegations of the foregoing paragraphs are incorporated as if realleged.

45.     Plaintiff was discriminated against, in the terms and conditions of his employment as described above, and in his termination, on the basis of his national origin.

46.     Synthomer's mistreatment of Plaintiff in the foregoing ways was motivated by Plaintiff's national origin.

47.     Synthomer violated Title VII and Ohio law by discriminating against Plaintiff on the basis of his national origin.

48.     Defendants' conduct was intentional, malicious, and recklessly indifferent to Plaintiff's rights.

49.     As a direct and proximate result of the conduct of Defendants, Plaintiff has suffered and continues to suffer emotional pain, suffering, stress, inconvenience, embarrassment, humiliation, mental anguish, loss of enjoyment of life, other nonpecuniary losses, and other injury, including lost wages.

## COUNT TWO – AGE DISCRIMINATION
### (FEDERAL LAW)

50.     The allegations of the foregoing paragraphs are incorporated as if realleged.

51.     Federal law prohibits Synthomer from discriminating against Plaintiff due to his age.

52.     Synthomer discriminated against Plaintiff due to his age.

53.     As a direct and proximate result of Synthomer's unlawful conduct, Plaintiff has suffered and will continue to suffer damages.

54.     Synthomer's conduct was intentional, malicious, and recklessly indifferent to Plaintiff's rights as an individual under the ADEA.

## COUNT THREE – RETALIATION
### (FEDERAL LAW AND OHIO LAW)

55.     The allegations of the foregoing paragraphs are incorporated as if realleged.

56.     Title VII, the ADEA, and the Ohio Revised Code prohibit retaliation against employees due to an employee's opposition to discrimination based upon age discrimination or national origin discrimination.

57.     Defendants violated Plaintiff's rights by retaliating against Plaintiff in response to Plaintiff's protected activity consisting of complaints regarding national origin and age discrimination.

58.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer damages, including economic loss and emotional distress.

59.     Defendants' conduct was intentional, malicious, and recklessly indifferent to Plaintiff's rights as an individual under Title VII, the ADEA, and the Ohio Revised Code.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court enter judgment in his favor, and against Defendants, as follows:

(a)　　　Award Plaintiff back pay with prejudgment interest and all the fringe benefits to which he is entitled;

(b)　　　Award Plaintiff front pay and benefits to the extent reinstatement is not feasible, or award reinstatement of Plaintiff;

(c)　　　Award Plaintiff damages for his diminished earning capacity;

(d)　　　Award Plaintiff compensatory damages for his non-economic injuries;

(e)　　　Award Plaintiff liquidated damages as authorized by the ADEA;

(f)　　　Award Plaintiff punitive damages in an amount to be determined at trial;

(g)　　　Award Plaintiff reasonable attorney fees and the costs of this action;

(h)　　　Award Plaintiff all damages and remedies available under Title VII, the ADEA, and Ohio law; and

(i)　　　Award Plaintiff such other and further relief as this Court may deem appropriate.

Respectfully submitted,

/s John C. Camillus
John C. Camillus, Trial Attorney　　　(0077435)
Law Offices of John C. Camillus, LLC
P.O. Box 141410
Columbus, Ohio  43214
(614) 558-7254
(614) 559-6731 (Facsimile)
jcamillus@camilluslaw.com

Attorney for Plaintiff
Philip Charbonneau

## JURY DEMAND

Plaintiff requests trial by a jury of his peers.

/s/ John C. Camillus
John C. Camillus